IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MUNEER ALI KSAIM SHAQRAN, MALEK MUNEER ALI SHAQRAN, NUSAIBAH MUNEER ALI SHAQRAN, SHAYMAA MUNEER ALI SHAQRAN, MOHAMED ABDO MOZAYID, and DHANINAH NAJI SAIF SENAN, **Plaintiffs,** | CIVIL ACTION |
| v. | NO.  23-1406 |
| ANTONY BLINKEN, UNITED STATES DEPARTMENT OF STATE, UNITED STATES EMBASSY CAIRO, and UNITED STATES OF AMERICA, **Defendants.** | |

**MEMORANDUM OPINION**

This is a suit seeking mandamus relief and money damages from Secretary of State Antony Blinken, the United States, and several federal agency Defendants.  In brief, Plaintiffs— Muneer Shaqran; his children Malek, Nusaibah, and Shaymaa (collectively, "Shaqran children"); his father Mohamed Mozayid; and Mozayid's wife Dhaninah Senan—allege that they were subjected to various inappropriate acts by government officials as part of an unlawful scheme targeting Yemeni-born Americans.  Presently pending is Defendants' motion seeking to: (1) sever the claims involving Mozayid and Senan from those involving the remaining plaintiffs; (2) dismiss Mozayid and Senan's claims for improper venue; and, (3) dismiss the remaining claims for lack of subject matter jurisdiction.  For the reasons that follow, the motion will be granted.

**I.    FACTUAL BACKGROUND**

The Amended Complaint alleges the following facts, which are accepted as true in this posture.  *See Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993).

1

Born in Yemen, Muneer Shaqran first entered the United States in 2000, when he was 18 years old.  His father, Mohamed Mozayid, is a naturalized United States citizen and sponsored his application for lawful permanent residency.  The two settled in the Los Angeles area, and over the following years, Shaqran built a life in America, obtaining a driver's license, attending school, and opening a small business.  In 2005, Shaqran himself became a naturalized citizen, and that same year he was issued a United States passport.

Shaqran's wife is a Yemeni citizen, and the couple returned to Yemen for the births of their three children, Malek, Nusaibah, and Shaymaa.  Under the law in effect at the time, children born abroad to "parents one of whom is an alien, and the other a citizen of the United States" were only deemed natural born citizens if the citizen parent had been "physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years."  8 U.S.C. § 1401(g). Though he had taken several trips abroad between his emigration from Yemen and the birth of his eldest child in 2007, Shaqran was physically present in the United States for 2120 days (*i.e.*, 5 years, 9 months, and 3 weeks) between 2000 and 2007, all of which was after his fourteenth birthday.  As such, his Amended Complaint alleges, the three Shaqran children were nationals and citizens of the United States upon their birth.

Trouble began, however, when Shaqran attempted to procure United States passports for his children from the U.S. Embassy in Sana'a, Yemen in 2011.  To establish his children's citizenship, Shaqran submitted various records with the passport applications to document his physical presence in the United States for a five-year period prior to their births, including his Yemeni passport (which contained dated entry and exit stamps) and tax documents, school records, and lease agreements.  Though he was told by Embassy officials that the applications

would be processed in approximately two weeks, and that the documents would be returned to him along with his children's passports, that did not occur.  For more than a year, Embassy staff repeatedly told Shaqran that the applications were still being processed, proving no further information.  Embassy staff further refused to return the documents he had submitted to establish his presence in the United States.  After about a year of waiting, with his children's passport applications still in limbo, Shaqran had to return to the United States to tend to his business there, leaving his children in the care of his wife and father.

In early 2013, officials from the U.S. Embassy in Sana'a contacted Shaqran's father, Mohamed Mozayid, directing that he and Shaqran's wife visit the Embassy in person to collect the children's passports.  The two reported as directed the following day, whereupon Embassy staff confiscated Mozayid's United States passport and led him aside into a locked room.  What followed was, according to the Amended Complaint, an hours-long Kafkaesque ordeal.  Mozayid, unable to leave, was questioned by aggressive consular officers, who repeatedly suggested that he might have terrorist connections and that he obtained his United States citizenship under false pretenses.  After many hours, during which Mozayid was not permitted to contact an attorney, one of his interrogators produced a piece of paper and demanded that Mozayid sign it.  Though Mozayid could not read English, and accordingly did not understand what he was being asked to sign, he did so, believing it was the only way to end the ordeal.  Embassy officials then escorted him from the premises.  When Mozayid asked if they would return his United States passport, one official told him "You came to America with a different name. Do you understand that? You are NEVER going back to America."[1]

---

[1] In October 2018, the State Department's Office of Inspector General issued a report reviewing allegations of improper passport seizures at the U.S. Embassy, Sana'a.  That report confirmed that these seizures took place and that they frequently occurred in a manner contrary to State Department policy.  Office of Inspector General, United

Approximately one year later, in December 2013, Mozayid received another phone call from Embassy officials, who asked him to come back to the Embassy so that they could return the United States passport that they had previously confiscated from him.  When Mozayid arrived, however, he was presented with a written notice of passport revocation.  That notice, a copy of which is attached to the Amended Complaint, stated that the paper Mozayid had signed during his interrogation included a confession that his true name was Ali Kassim Ali Shakran, that he had assumed the fraudulent identity of Mohamed Mozayid, and that he had applied for a passport under that false name.  The notice went on to state that that because Mozayid had made a false statement of material fact on his passport application, his passport was revoked.  Mozayid has attempted to appeal this decision, to no avail.  He remains abroad, unable to return to the United States despite his desire to do so.

Meanwhile Shaqran, who had returned to the United States, found himself facing a similar ordeal.  In 2018, he went to the Passport Office in Philadelphia to renew his United States passport, where he was told that his expired passport would been taken and held "for review" pending approval of the new passport.  That November, however, Shaqran received a letter informing him that his passport application had been denied for fraud.  Pointing to the statement signed by his father at the U.S. Embassy, Sana'a, which stated that Shaqran's true name was Muneer Mohammed Abdo Mozayid, the letter stated Shaqran had failed to satisfy his burden "of establishing your identity as required by 22 C.F.R. § 51.23."  His expired passport was not returned.

---

States Department of State, Report No. ESP-19-01, *Review of Allegations of Improper Passport Seizures at Embassy Sana'a, Yemen* (Oct. 2018), available at: https://www.oversight.gov/sites/default/files/oig-reports/ESP-19-01.pdf; *see Doe 1 v. Perkiomen Valley Sch. Dist.*, 585 F.Supp.3d 668, 674 n.2 (E.D. Pa. 2022) ("A court may take judicial notice of information on a government website.").  Plaintiffs allege, upon information and belief, that Mozayid's passport seizure was one of the cases discussed in this OIG report.

About two years later, the State Department reversed course. For context, several months prior, the Second Circuit in *Alzokari v. Pompeo* held that the State Department may not revoke or deny a passport solely on the grounds that an individual applied under their name as it appears on their certificate of naturalization. 973 F.3d 65, 66 (2d Cir. 2020). As the court explained, "[i]f the Department suspects that a citizen's certificate of naturalization was fraudulently obtained, it can institute denaturalization proceedings. What the Department cannot do is circumvent these proceedings by revoking a citizen's passport." *Id.* at 72 (citations omitted). Several months after this decision was published, and following an additional demand by Shaqran's counsel, the State Department issued him a renewed United States passport. Based on these delays, Shaqran filed a Claim for Damage, Injury, or Death (SF-95) with the State Department, alleging that he was injured by the agency's unjustified delay in issuing his passport, which had kept him separated from his wife and children. As of this lawsuit, the agency has not responded to this claim.

Travel documents in hand, Shaqran flew to Cairo, Egypt, where his wife and children had relocated to escape the ongoing political instability in Yemen. After reuniting with this family, he once again applied to obtain a United States passport and Consular Report of Birth Abroad ("CBRA")[2] for his three children. But again, and despite having recently been issued his own United States passport, Shaqran was met with stiff resistance by consular officials. In December 2021, Shaqran was summoned to the U.S. Embassy, Cairo, where Embassy staff interrogated him about his and his father's true identity—*i.e.*, the same line of questioning Mozayid had faced at the Sana'a embassy roughly nine years prior. The officials further challenged Shaqran's inability to provide original copies of the documents establishing his physical presence in the

---

[2] A CBRA, which is issued upon "the submission of satisfactory proof of birth, identity and nationality," is a document formally certifying that an individual born abroad was a United States citizen at birth. 22 C.F.R. § 50.7; *see* 22 U.S.C. § 2705(b).

United States prior to the birth of his children.  When Shaqran's attorney reminded the officials

that these records were still in the possession of the State Department—as they had been since

Shaqran initially applied for passports for his children in 2011—the response was hostility and

derision, with officials telling Shaqran that ""That is not our job! That is not our problem!"  It

was not until September 2023, several months after this lawsuit was filed, that the State

Department relented and issued passports to the Shaqran children.  The original documentation

supplied by Shaqran, however, has not been returned.  This includes Shaqran's Yemen passport,

which establishes his physical presence in the United States prior to the birth of his children via

its entrance and exit stamps.

Also after this lawsuit was filed, Defendants agreed to schedule a direct filing

appointment for I-130 Petition for Alien Relative by Mozayid on behalf of his wife, Dhaninah

Senan, who is a Yemeni citizen, at the U.S. Embassy in Cairo.  They refused, however, to allow

Mozayid and Senan to appear at this appointment with counsel.  And they have likewise refused

to return Mozayid's United States passport or issue a one-way travel document back to the

United States.

## II.   DISCUSSION

In their Amended Complaint, Plaintiffs seek: (1) a writ of mandamus ordering

Defendants to return Mozayid's expired United States passport and to issue him a one-way travel

document to return to the United States; (2) a declaratory judgment that I-130 direct file

petitioners have a right to be accompanied by legal counsel at interviews and adjudications

conducted at overseas embassies and consulates, and an injunction prohibiting Defendants from

denying Mozayid and Senan their right to be represented by counsel at I-130 direct file

interviews and adjudications; (3) a writ of mandamus ordering Defendants to process Shaqran's

6

SF-95 claims for damages; and, (4) three claims for money damages pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.*[3]  Defendants' various arguments for how these claims should be disposed of will be evaluated in turn.

### A.  Motion to Sever and Dismiss for Improper Venue

At the outset, Defendants move to sever the claims involving Mozayid and Senan, who were added as plaintiffs when Shaqran amended his original Complaint.  Defendants argue that these claims—counts one and two of the Amended Complaint—were misjoined to this action and that, once severed, the claims should be dismissed for improper venue.  They are half right: while count two, which involves the right to counsel at an I-130 petition direct file appointment, was misjoined to this action, count one, which seeks the return of Mozayid's expired United States passport and the issuance of a one-way travel document, was not.

The Federal Rules permit "joinder"—*i.e.*, the joining together in one action—of multiple plaintiffs, provided that: "[1] they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and [2] any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1).  "Misjoinder, on the other hand, occurs when there is no common question of law or fact or when [] the events that give rise to the plaintiff's claims against defendants do not stem from the same transaction."  *DirecTV v. Leto*, 467 F.3d 842, 844 (3d Cir. 2006).  To remedy misjoinder, the court may either "add or drop a party" or "sever any claim

---

[3] In addition to these remedies, the Amended Complaint's *ad damnum* clause also seeks several remedies that are not associated with a specific cause of action, including "a declaratory judgment declaring [the Shaqran children] are nationals and citizens of the United States" and an order directing "Defendants to return to Muneer Ali Ksaim Shaqran all original documents still in their possession."  But the Federal Rules require that "a demand for the relief sought" be accompanied by "a short plain statement of the claim."  Fed. R. Civ. P. 8(a)(2), (3).  And "the court cannot provide a remedy, even if one is demanded, when plaintiff has failed to set out a claim for relief."  *USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2004) (quoting Wright & Miller, Fed. Prac. & Proc. § 2664)).  These free-standing remedial requests—unaddressed by both parties' briefs—fall short of that standard.

against a party."  Fed. R. Civ. P. 21.  "[I]f claims are severed pursuant to Rule 21 they 'become

independent actions with separate judgments entered in each.'"  *White v. ABCO Eng'g Corp.*,

199 F.3d 140, 145 n.6 (3d Cir. 1999) (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*,

928 F2d 1509, 1519 (10th Cir. 1991)).

Although the joinder rules are construed liberally, *see United Mine Workers of Am. v.

Gibbs*, 383 U.S. 715, 724 (1966), both elements of Rule 20 must be satisfied for additional

plaintiffs to be joined to an action.  The first element—the "same transaction" or "transactional

relatedness prong"—"refers to the similarity in the factual background of the relevant claims."

*Cooper v. Fitzgerald*, 266 F.R.D. 86, 88 (E.D. Pa. 2010).  "Courts generally apply a case-by-case

approach when considering whether the facts of several claims constitute a single transaction or

occurrence, or a series of transactions or occurrences."  *Id.* (quoting *Lopez v. City of Irvington*,

2008 WL 565776, at *2 (D.N.J. Feb. 28, 2008)).  "Significantly, '[t]ransaction' is a word of

flexible meaning, which may comprehend a series of many occurrences, depending not so much

upon the immediateness of their connection, as upon their logical relationship."  *Id.* (quoting *Al

Daraji v. Monica*, 2007 WL 2994608, at *8 (E.D. Pa. Oct. 21, 2007)).

Count one, which seeks an order directing Defendants to return Mozayid's expired

United States passport and to issue him a one-way travel document, easily satisfies this low

threshold.  As the Amended Complaint explains, its factual allegations stem from a common

policy by government officials of "systematic[ly] targeting [] United States citizens of Yemeni

race and/or nationality for the purpose of restricting and preventing the transfer of citizenship to

their children."  As part of this policy, Defendants are alleged to have both undertaken improper

confiscations of Yemeni-Americans' passports (the subject of count one) and slow-walked

applications for CBRAs and related documents for the children of Yemeni-Americans (the

8

subject of Shaqran's FTCA claims). Indeed, as the Amended Complaint recounts, Mozayid's passport was confiscated during a visit to the U.S. Embassy, Sana'a, for the purposes of resolving his grandchildren's outstanding passport applications. That is a sufficient "logical relationship" between Mozayid's claim seeking the return of his passport and the claims of his son and grandchildren to satisfy the first element of Rule 20.

For much the same reason, this claim by Mozayid also satisfies the second element of Rule 20, which considers whether "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a). The threshold for this commonality requirement is "very low.'" *Miller v. Hyrade Food Prods. Corp.*, 202 F.R.D. 142, 145 (E.D. Pa. 2001) (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 n.15 (3d Cir. 1998). "Plaintiffs need only share one common question of law or fact." *Id.* Here, as explained, there are common questions of fact relating to Defendants' treatment of Yemeni-born passport and visa applicants. *See Al Daraji*, 2007 WL 2994608, at *9 ("A defendant's conduct is a sufficient commonality to justify permissive joinder, even though defendant's individual acts towards plaintiffs were separate incidents . . . .").

Count two—which seeks to vindicate Mozayid and Senan's right to counsel at their I-130 petition direct file appointment—is a different matter. While the Amended Complaint alleges that "Defendant Embassy refused the request to allow Counsel to attend the interview," this refusal has no apparent connection to the alleged scheme targeting Yemeni nationals that undergirds the Plaintiffs' other causes of action. To the contrary, it appears that the refusal was the result of a policy adopted by the U.S. Embassy, Cairo, and applied evenly to all direct file applicants—Yemeni and non-Yemeni alike. Moreover, other than the fact that it relates generally to immigration law, there is no common question of law or fact connecting this claim

to the other claims in the Amended Complaint, which all stem from actions taken by Defendants years before Mozayid filed an I-130 petition on behalf of his wife.  Rule 20(a)'s purpose is to "promote judicial economy . . . reduce inconvenience, delay, and added expense."  *Al Daraji*, 2007 WL 2994608, at *10 (quoting *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997)).  None of these interests is served by allowing such a factually and legally distinct claim to be joined to Mozayid and Shaqran's other claims.

As explained, a severed claim "become[s] [an] independent action[]," *White*, 199 F.3d at 145, "proceed[ing] as a discrete unit with its own final judgment, from which an appeal may be taken."  Wright & Miller, Fed. Prac. & Proc. § 1689 (3d ed. June 2024 update).  Defendants argue that once severed from the other claims in the Amended Complaint, count two should be dismissed for improper venue.  They are correct about that.  In an action against federal agencies and officers, venue is proper where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e)(1).  None of these conditions is met here.  First, "[f]or purposes of § 1391(e)(1)(A), the United States and its agencies reside in Washington, D.C."—*i.e.*, not the Eastern District of Pennsylvania.  *Adams, Nash & Haskell, Inc. v. United States*, 2020 WL 1305620, at *2 (D.N.J. Mar. 19, 2020).  Second, the events giving rise to this count took place in and around the U.S. Embassy in Cairo, Egypt.  And third, neither Mozayid nor Senan resides in this district.  Thus, because venue is improper, this count will be dismissed pursuant to Fed. R. Civ. P. 12(b)(3).[4]

---

[4] While this motion was pending, the Supreme Court issued its decision in *Department of State v. Muños*, 2024 WL 3074425 (U.S. June 21, 2024), which held that American citizens do not have a fundamental liberty interest in their non-citizen spouses being admitted to the United States.  *Id.* at *6.  Defendants argue that this decision effectively

### B.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

#### i.    FTCA Claims

Counts four, five and six of the Amended Complaint seek money damages pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.*  In essence, Shaqran alleges that Defendants' slow-walking of his and his children's passport applications, which kept his family physically separated for years, constituted negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress.  But the United States, as sovereign, "is immune from suit unless it consents to be sued."  *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010).[5]  And while the "FTCA operates as a limited waiver of the United States's sovereign immunity," *id.*, a plaintiff may only seek money damages under this statute damages after "first present[ing] the claim to the appropriate Federal agency."  28 U.S.C. § 2675.  This "presentment" requirement is jurisdictional, and "Plaintiff carries the burden of proof to establish presentment of [their] claim to [the agency]."  *Medina v. City of Phila.*, 219 F. App'x 169, 172 (3d Cir. 2007); *accord Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) ("When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.").  Because Shaqran has failed to satisfy that burden, these claims must be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

As explained, an FTCA claim is only justiciable if the plaintiff "shall have first presented

---

disposes of Mozayid's right-to-counsel claim, since it affirms that neither Mozayid nor Senan has procedural due process rights beyond those explicitly provided by Congress.  Mozayid disputes this, arguing that the *Muños* decision is not "relevant to the issues currently before this Court."  Because Mozayid's right-to-counsel claim is being dismissed for improper venue, the Court declines to resolve this dispute.

[5] While the Amended Complaint purports to press Shaqran's FTCA claims against all four defendants—including the State Department, Secretary of State Antony Blinken, and the U.S. Embassy, Cairo—the FTCA only permits claims against the United States itself, not federal employees or agencies.  *CAN v. United States*, 535 U.S. 132, 138 n.2 (3d Cir. 2008).

the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency." 28 U.S.C. § 2675(a).  By regulation, a claim shall have been deemed presented "when a Federal agency *receives from a claimant . . .* an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain." 28 C.F.R. § 14.2(a) (emphasis added).  Proving presentment is "not an onerous requirement, as proof of receipt can easily be obtained by sending a claim by certified mail or by registered mail, or by obtaining acknowledgment of receipt from the agency itself." *Medina*, 219 F. App'x at 172-73.  But there must be some proof, particularly where, as here, the State Department has "submitted declarations stating that [the agency] has no record of receipt of Plaintiff's administrative claim." *Id.* at 173.

In his opposition to Defendants' motion to dismiss, Shaqran points to three pieces of evidence that he argues establish presentment: (1) a signed copy of his SF-95; (2) a declaration from his attorney stating that she prepared the SF-95 on Shaqran's behalf and directed her clerk to ship it to the State Department via certified mail; and, (3) USPS certified mail return receipts indicating that an article was shipped to "U.S. DEPARTMENT OF STATE, Civil Division, Department of Justice, 1100 L St., N.W., Room 8102, Washington DC 20005-4035."  That receipt is stamped "DOJ Mailroom" with the date November 27, 2020.

For three reasons, this evidence is inadequate to establish that Shaqran's claims were presented to the State Department.  First, as Defendants correctly note in their reply, there is no evidence tying the certified mail return receipts to Shaqran's SF-95 (as opposed to some other mailing); the declaration from his attorney is entirely silent on this point.  Second, even assuming that there was such evidence, the address listed on the receipt is not that of the State Department, but rather the Department of Justice's Office of International Judicial Assistance.  This is a

12

problem for Shaqran, since the presentment regulations require that a claim for damages "be presented to the Federal agency whose activities gave rise to the claim."  28 C.F.R. § 14.2(b)(1).  Here, that agency was the State Department, not the Department of Justice.

Finally, and most significantly, even assuming the Department of Justice transferred this claim to the State Department upon receipt (as permitted by regulation, *see id.*), the earliest this transfer could have occurred was November 27, 2020—the date stamped on the return receipts.  But the FTCA requires that a claim be presented to the correct agency "within two years after such claim accrues," 28 U.S.C. § 2401(b), and a claimant under the statute has the burden of showing that their claim was actually received within that period.  *Lightfoot v. United States*, 564 F.3d 625, 628 (3d Cir. 2009).  Here, Shaqran's SF-95 lists "November 9, 2018" as the "Date and Day of Accident."  Thus, when his claim for damages arrived at "DOJ Mailroom" on November 27, 2020, the FTCA's limitations period had already run, rendering his claim "forever barred" by that statute.  28 U.S.C. § 2401(b); *see Barren ex rel. Barren v. United States*, 839 F.2d 987, 992 (3d Cir. 1988) ("[L]imitations periods must be strictly construed, especially those involving a waiver of sovereign immunity.").  It must therefore be dismissed for lack of subject matter jurisdiction.  *See Deutsch v. United States*, 67 F.3d 1080, 1091 (3d Cir. 1995) ("The requirement[] that a claimant timely present a claim . . . [is a] jurisdictional prerequisites to a suit under the FTCA.").

### ii.   *Mandamus Claims*

In the first and third counts of the Amended Complaint, Plaintiffs seek relief pursuant to the Mandamus Act, 28 U.S.C. § 1361.  Specifically, Mozayid seeks the return of his expired United States passport, which was revoked in 2013, and the issuance of a one-way travel document so that he can return to the United States.  Shaqran, meanwhile, seeks an order

13

directing "that the Defendants follow their own policies and adjudicate the SF-95 as to Plaintiffs

Malek, Nusaibah and Shaymaa as permitted under 22 U.S.C. 2669-1."

"[T]he remedy of mandamus is a drastic one, to be invoked only in extraordinary

situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). To qualify for relief, a

plaintiff must show: "(1) a clear and indisputable right to relief, (2) that the government agency

or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists."

*Temple Univ. Hosp., Inc. v. Sec. U.S. Dep't of Health & Hum. Servs.*, 2 F.4th 121, 132 (3d Cir.

2021) (quoting Wright & Miller, Fed. Prac. & Proc. Judicial Review § 8312 (2d ed. Apr. 2021

update)). Again, these requirements are jurisdictional. *Id.* "[U]nless all are met, a court must

dismiss the case for lack of jurisdiction." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C.

Cir. 2016). Here, because Plaintiffs have failed to make out these elements, their mandamus

claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

To begin with count one, which seeks an order "mandat[ing] the return of Plaintiff

Mohamed Abdo Mozayid's expired United States passports and issue a one way travel document

to the United States," this claim fails for lack of a mandatory duty. "The common-law writ of

mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only

if he has exhausted all other avenues of relief and only if the defendant owes him a clear

nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). To that end, "a plaintiff

must allege that an officer of the Government owes him a legal duty which is a specific, plain

ministerial act devoid of the exercise of judgment or discretion." *Harmon Cove Condo. Ass'n,

Inc. v. Marsh*, 815 F.2d 949, 951 (3d Cir. 1987) (internal quotation marks omitted). "An act is

ministerial only when its performance is positively commanded and so plainly prescribed as to

be free from doubt." *Id.*

Mozayid's mandamus claims fail to identify such a non-discretionary duty.  With regard to the return of his revoked United States passport, "[a] passport at all times remains the property of the United States and must be returned to the U.S. Government upon demand."  22 C.F.R. § 51.7.  Mozayid fails to identify any authority for his argument that Defendants have a legal duty to return something that was, at all times, "property of the United States."  *Cf. United States v. Banks*, 372 F. App'x 237, 242 (3d Cir. 2010) ("Because the passport remains the property of the United States Government, [the defendant] is not entitled to its return."); *Atem v. Ashcroft*, 312 F.Supp.2d 792, 801 n.16 (E.D. Va. 2004) ("No property interest is implicated because United States passports are not the property of the individuals to whom they are issued.").

Rejecting this premise, Mozayid argues that by confiscating his passport and refusing to return it, Defendants have effectively banished him from the United States, "a defacto denaturalization without actually engaging in the civil process necessary to do so."  But this is incorrect.  As Defendants readily concede, Mozayid was and remains a naturalized United States citizen, and his Certificate of Naturalization remains conclusive proof of that citizenship.[6]  *See* 22 U.S.C. § 2705.  And Defendants further concede that in light of the Second Circuit's decision in *Alzokari v. Pompeo*, "a passport would likely be issued to [Mozayid]" if he applied under the name appearing on that Certificate of Naturalization, as one was issued to Shaqran in the aftermath of that decision.

This is also why Mozayid's second mandamus claim, which seeks the issuance of a one-

---

[6] In his opposition to Defendants' motion to dismiss, Mozayid suggests that when Embassy officials revoked his passport, they also confiscated his Certificate of Naturalization.  But this allegation, while troubling, does not appear in the Amended Complaint, which merely alleges that at some point in the future, officials might "illegally confiscate his Certificate of Naturalization under the guise of the application process."  As such, the allegation cannot be considered at this juncture, since it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

way travel document to return to the United States, is premature. "It is the fundamental right of an American citizen to reside wherever he wishes, whether in the United States or abroad, and to engage in the consequent travel." *Acosta v. Gaffney*, 558 F.2d 1153, 1157 (3d Cir. 1977). And so, if an American citizen really were stranded abroad, government officials might well have a non-discretionary duty to issue the paperwork needed for the citizen's repatriation—an action specifically authorized by State Department regulation. *See* 22 C.F.R. § 51.60(i) ("In appropriate circumstances, where an individual's passport application is denied or passport revoked consistent with this part, the Department may issue a limited validity passport good only for direct return to the United States."). But at this juncture, there is no indication that Mozayid is facing this dilemma. As explained, Defendants have conceded that "in light of *Alzokari*, a passport would likely be issued to [Mozayid]" if he applied for one. Because he has not yet done so, let alone had his application denied, it is too soon to say whether Defendants have a non-discretionary duty to issue a one-way travel document.

Shaqran's claim for mandamus relief, which seeks an order mandating that Defendants adjudicate his administrative claims for damages, likewise fails. As discussed in Part II.B, *supra*, the State Department denies having ever received Shaqran's administrative claims for damages, and he has not met his burden of establishing otherwise. That failure, in addition to dooming his FTCA claims, also renders Shaqran's mandamus claim nonjusticiable, since an agency has no mandatory duty to adjudicate a claim that it never received. *Cf. Snyder v. Dep't of Navy*, 854 F3d 1366, 1375 (Fed. Cir. 2017) ("It is well-established that an agency is not required to respond to arguments that were never made to the agency.").

## III.   CONCLUSION

Once count two is severed from the Amended Complaint, venue over that claim in the

Eastern District of Pennsylvania is improper.  And because the Court lacks subject matter jurisdiction to adjudicate Plaintiffs' remaining claims, Defendants' motion will be granted, and this matter will be dismissed.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____

**WENDY BEETLESTONE, J.**